Our first case on today's docket is the case of City of DuQuoin v. Estate of Raymond Day and et al. We have Richard Whitney for the appellant and we have Michael Gollin for the appellant. Good morning, your honors, and may it please the court. This appeal stands for the hopefully unremarkable proposition that a municipality in Illinois may not destroy a building because an air conditioner fell out of one window of the building. And yet that is exactly what has happened in this case. Nor may it destroy a building because the city in question finds that the surrounding grounds have not been properly maintained. Your honors, simply stated, this case concerns a municipality that was so determined to destroy this woman's trailer home, whether its motives were personal or aesthetic or both, that it didn't bother to comply with the statute authorizing demolition of dangerous or unsafe buildings. And the court below just went along with it. The judgment and order of the court in this case, the court below, should be reversed for four compelling reasons. First, the plaintiff did not meet its burden of showing that the buildings were dangerous or unsafe, and it didn't even contend that the building was abandoned. Second, the court below did not make any finding that the buildings were dangerous or unsafe, not even in its written order that was drafted by the city attorney. Third, there was neither evidence nor a finding that the buildings were beyond reasonable repair, or any finding made regarding the required finding of the current value of the buildings. And in fact, the court didn't even express any concern about the condition of the buildings themselves, except for covering one window. And then fourth and finally, the defendant in this case presented compelling, uncontroverted evidence that she was subjected to selective enforcement in violation of the 14th Amendment, since the plaintiff had done nothing to remediate or demolish buildings in the same or worse condition for a longer period than the defendant's building. But that's not a defense, is it? That there might be other buildings that are in worse condition? Well, Your Honor, I would respectfully disagree. We did raise that as an affirmative defense in our pleadings, and there is no right to selectively enforce. If, in fact, the plaintiff's city, by policy and custom, had allowed other buildings in far worse condition not to be maintained and done nothing to remediate them, then it cannot basically pick on my client, cannot selectively enforce for reasons extraneous to that, at least not consistent with the 14th Amendment. And certainly, we welcome an order and a finding from this court on that point, but I don't think you need to get there. They didn't comply with the statute, and I think that that's an even more compelling and basic argument here, is you have to meet the requirements of the statute. The statutory scheme under this section of the code contemplates that in cases where maybe there's some minor repairs that need to be made, there's other remedies for that. The city could go in and it could have, if my client hadn't fixed the one open window, it could have gone in itself, repaired it, and then had a lien on the property for the cost of that minor repair or whatever it might have been. Didn't the trial court give the state of the day some time to do some repairs before it entered its order? Before – well, not before it entered its order, but before the city could go ahead and enforce. But, of course, we filed our appeal prior to that time expiring because we submit that the order itself was unlawful. Clearly, you know, the requirements of the statute were not met. There has to be a finding that the buildings in question are dangerous or unsafe. There was no finding. There wasn't even any evidence of this. The closest thing the city got in this case was speculation, well, maybe an animal might get into the building because of the open window. Wasn't there evidence that it was – we're talking about a trailer, not a building as such, correct? Well, I guess we can get a semantic argument. What's a building? It had been used as a residence, as a home. I guess my point was that there was an issue about the underpinnings, the way it was secured, and that was alleged, and I take it there was evidence to show that was a violation of a building code? Well, that was the city's argument that it was a violation of a building code. But I would, first of all, want to be clear that by underpinning, we're not talking about how the building was secured. We're talking about the skirting that covers the bottom of the structure to the ground a few feet. It's basically more for aesthetic purposes. You're saying it's cosmetic? Exactly. It has nothing to do with actually holding the building up or any – it's not really a structural defect in any sense, which distinguishes it from the cases cited by opposing counsel in its brief. But that's all that we're talking about, sometimes called underpinning, sometimes called skirting, and some of it was missing. But this is not – this does not render the building dangerous or unsafe, nor was there any – again, there was no finding by the court, there was no evidence as to how this was dangerous or unsafe. So basically, we had one person testifying, well, this might be unsafe, and the court entering order not even mentioning any finding that it was unsafe. Did it mention abandoned? The court at one point did opine in passing that this building looks like it was abandoned. But number one, that's not the same as making a legal finding that it was abandoned within the meaning of the statute. Secondly, within the statute, in order to find the building's abandoned, you also have to find it's dangerous or unsafe, you know, within the legal meaning. Plus, you also have to have evidence that either the taxes weren't paid for a period of two years or the water bills weren't paid for a period of two years, and they did not have that. There was some testimony about the taxes. Yes, my client herself volunteered that she hadn't gotten a tax bill for a period of two years. Not that she hadn't been paying it, but she hadn't gotten one the last several years. And that was the extent of that. So clearly, there was nothing that could be relied upon to find that that prong of the test had been met. But in any event, we don't even get to square one because, again, you have to find a building that's dangerous or unsafe in order to find it's abandoned within the statutory scheme. So we still go back to square one there. They simply didn't meet their burden, and the court didn't make any finding. Also, before you can enter an order that there be a demolition, the court has to make another finding, and I cite this in the brief from the Illinois Supreme Court Stokovich case, that you have to make a determination as to whether a demolition makes economic sense, whether or not the cost of repair would be greater than the value of the building. And that means you have to make a finding about the value of the building. None of that was done. There wasn't one scintilla of evidence presented by Plaintiff's City in this case about the value of the building. And in order to uphold the order of the court below, this court would have to make a determination that there was some unstated finding, that the value of this building was somehow exceeded by what it would cost to put an air conditioner in a window and maybe paint a little bit of skirting on the bottom. The word preposterous comes to mind here. This is so out of source with what the requirements of the statute are. I do not see how it could possibly be construed that they comply with the statute. And I think the subtext of what's going on here is that, as Your Honor indicated, there may have been other things that concern the city. Maybe there was violations of the code. But they have other remedies for that. They didn't proceed under the city code. They proceeded under this statute. And they didn't comply with it. And reversal is clearly called for in this case on those grounds alone. So no matter how you slice it, and none of the authorities cited by opposing counsel in the city's brief really address this issue. In both of those cases, there were two primary cases they rely upon. There were real findings that the buildings were dangerous and safe. In City of Alton, there were two fires. There were findings by a city engineer that there were structural defects. None of that applies in this case. We have really, what I think the subtext is, is there was concern about aesthetic issues. There's too much brush around the buildings. The judge even said something about keeping the grass mowed. Okay, fine. If that's the concern of the city, that's fine. But not under this statute. That's not grounds to destroy a whole building. I might mention briefly. It's probably come to the Court's attention. There's been a motion filed under mootness because apparently the city recently went ahead and destroyed a building, which reminds me a little bit about the proverbial story of the child who murders his parents and comes to the Court and asks for mercy because he's now an orphan. Now they're coming here and asking for mootness. Of course, I would ask the Court for some time to respond to the substance of this motion that the mootness doctrine applies. But just off the bat, I would certainly represent the Court. I believe that the collateral consequences exception to the mootness doctrine is clearly going to apply in this case because it's now converted what was an equal protection claim and a statutory claim into what's going to be a takings claim because they destroyed the building now. In any event, our other argument that we have raised here as an affirmative defense and another claim of error is that the defendant presented uncontroverted evidence that she was subjected to selective enforcement. Again, I don't think we need to get there. We'd certainly welcome an opinion on that if the Court chooses to get there because there was uncontroverted. She presented exhibit after exhibit of buildings that were plainly – the actual buildings were in worse condition than my client's building, and yet they had been unremitted by her own testimony for many years. The only thing on appeal that was raised is that with respect to a couple of them, they raised the argument that my client admitted on cross-examination that she wasn't aware that the city had made plans for meeting a couple of these other buildings. The problem with that argument, of course, is that just because you're asked a leading question on cross-examination, that's not evidence. So neither the Court alone nor this Court could really properly consider that as evidence just because my client was asked a leading question and said, no, I'm not aware of something that was never introduced substantively in evidence. I'll rely primarily on what we presented in the briefs as far as the selective enforcement argument. I think both the graphic evidence and the testimony is pretty clear that these buildings were in much worse condition than the very minor things that arguably were wrong with my client's building, none of which made them dangerous or unsafe. If there are no questions, I see no reason to – I'll be happy to stand in the briefs. Thank you, Mr. Whitten. You have the opportunity for rebuttal. Thank you. Mr. Dolan. Thank you. May it please the Court, Counsel. My name is Michael Dolan and I represent the Appalachian City of Des Moines in this matter. The Court is faced with two issues today that both the Counsel mentioned and I'll focus in on. First is, was the Court's June 16, 2010 judgment finding that the structures on this property were dangerous and unsafe, was that against the manifest weight of the evidence? And the other one is a procedural point, that is, whether or not the demolition of the trailer has now rendered this appeal moot and subject to dismissal. I'll follow Counsel's lead and I'll deal with the merits before I get into the mootness doctrine. First of all, the Court's finding was not against the manifest weight of the evidence. If you believe Counsel, and maybe we read a different record, what we have here is a trailer with an air conditioner that fell out of a window and as a result the City had a vendetta against this lady and he demolished the trailer. That's what I just heard. What's ignored is the testimony of Ron Darnell and Dale Spencer with the Property Maintenance Department in the City of Des Moines. Let me just highlight a few things that they said that are set forth in our brief. First of all, dealing with weeds, brush, debris, that's existed for years. That goes back 15 years. Judge Watson, you asked, did they get time for her to clean this up? You betcha they did. They gave her 60 days after this judgment, and guess what? They gave her an answer 15 years before we even got to court to deal with this. She never did, and that's an error. That was entered by Judge Stewart some years ago. Trees are growing around. Now, okay, well, trees, this is an aesthetic issue. We don't like trees and high grass. Well, take a look. In the record on appeal and in our appendix, our pictures, I think I could sit down right now, have you review the photographs, and win this case. Because what they show is trees growing into the trailer, trees all along the trailer. The pictures are graphic, but what was dangerous or unsafe about this? Judge, there were holes in the trailer. The roof was caving in. It's not just an air conditioning falling out. The underpinnings, Judge, you mentioned the underpinnings. Of course that's a code violation. With a lot of other code violations, that's accessible to animals. That's accessible to a lot of things. That makes it dangerous and unsafe. And more importantly is when you look at the photographs, this is not just a trailer that has a TV, couch, everything in there. There's an air conditioner out. Take a look at the photographs. Review the testimony. There is debris. There is garbage in it. There is food, food wrappers, food in that trailer, junk in there for years. That makes it unsafe. How long had it been since anyone had actually lived in that trailer? Do we know that? At the time of the trial, she had not lived in that trailer, I believe, for about a year. It may have been longer than that, Your Honor. As far as your question, Judge Weston, regarding whether or not this was abandoned, it was unoccupied. There's no doubt about it. That's not an issue. It was unoccupied. There's no way anybody could occupy that trailer. It's physically impossible to have lived in that trailer in that condition. Wasn't there testimony about when electricity had been? Yes, there was. Electricity and water had been shut off for a year. There was no electricity or water. She admitted in her affirmative defense she had no heating, no plumbing. You take that along with the holes in the trailer, the windows out, the roof problems, debris inside, the underpinnings missing, no electricity, holes in the yard. Holes in the yard, you think, okay, that's aesthetic. Well, it is dangerous. When you have people that, for the last 15 years, the city has to go in, when she refuses to maintain the property, go in and cut weeds and grass out. Had this only been weeds and grass, we may be talking about a different case, but it's more than that. The opinions regarding whether this was dangerous and unsafe, it's real easy. Mr. Darnell testified that, in his opinion, this property was dangerous and unsafe. Mr. Spencer also mimicked that. He said it's uninhabitable. It's not only unsafe, it's unsanitary. Well, guess what? You can see from the photographs that it is. What's the evidence that the defendant produced to show that this was safe and reasonable to live in, not dangerous? None. This was a vacant building that was dangerous and unsafe. Now, following up with Judge Weston's comment regarding, was she given some time? She had two options. The court was real clear. Fix it. Make it safe. Let's make sure it's not dangerous. Or demolish it. It's your choice. She had 60 days to do that, and she didn't do it. Now, she claims that the city failed to establish that we couldn't, we didn't show, the city didn't show that it was capable of being repaired. Well, let me talk about the repair issue a little bit. Back in 2007, three years prior to this, the city passed a resolution condemning the property. Back in 2009, she was served. This is January of 2009. The trial was in April of 2009. You would think from 2007 through January of 2009, some action would have been taken. No. There was no action taken by her. They have the trial over a year later. The judgment center gives her another five-day out. What does she do? She spits it out. She says, no repairs. I'm not going to demolish it. Nine months later, nine months later, after it was briefed in this court, after we got notice, the city said, we're demolishing it. We have to, for safety reasons. And they demolished it. Now, there's a question in the defendant's mind regarding, well, there has to be specific findings. The court didn't have any specific findings. Well, as the appellate court knows, guess what? We have a bench trial. You can affirm a judgment for any reason appearing in a record on appeal. You don't need specific findings. Now, if I'm an appellate judge, I would say I would like specific findings. That would make my job a lot easier. This court did make specific findings. Regardless, if it said, I'm ordering you to make it safe, do the repairs, or it's going to be demolished, no findings at all, that would still be enough for this court. Why? Because the record on appeal contains the evidence to show that it was dangerous and unsafe. Now, I refer you to paragraph 7 of the order. What counsel makes an issue of is paragraph 7 has findings by the court regarding various defects in the building. Paragraph also says it's an advanced state of disrepair. Now, true, I'll agree that what paragraph 7 mimics is the allegations in the complaint. Paragraph 12 mimics the allegations of the defendant's defenses. The court in that order, judgment that it signed, mimics those. But we have to use common sense, folks. The court found those, and I think it's implicit when you refer to those that it was either accepting or rejecting those. Would it have been better if the court said, I specifically find A, B, C, and D? Perhaps, but I don't think it's necessary in this particular case when the order is read in context. Now, regarding the cases we cite, City of Granite City and City of Alton that counsel refers to, City of Granite City is real easy. That case stands for the proposition you don't need the magic words when you're dealing with repairs beyond reasonable repair. Let me give you an example. If there's a car sitting on the railroad tracks in town here, the train comes by, demolishes that car. Are you going to tell me I need an expert to tell you what the fair market value of that car was before it was demolished by the train and after? And therefore, without that, I can't tell you that it's beyond repair? Of course not. Same in this particular case. With the testimony of the individuals, with the photographic evidence, this was beyond repair. And to suggest that before we had to bring in people to give the fair market value on analysis just doesn't apply. Do we know how old the trailer was? No, I don't believe there was any testimony regarding the age of the trailer. And quite frankly, I don't care if it was 2 years old or 30 years old. With the state of disrepair, as the court pointed out, City of Alton, if repairs are going to amount to total reconstruction, then you can go ahead and demolish it. And we can tell that from the pictures you're saying? Oh yeah, and the testimony. Pictures and testimony. And basically the evidence. Was there testimony from the owner or the state regarding the fact that they disagreed with the findings of the city inspectors? Excellent point, Your Honor. No. What did you think? If you're going to tear down my trailer that I want to live in, that I haven't lived in for years and it's in disrepair, that I would bring somebody in and say, for $500, I can repair that hole in the trailer where the air conditioner was. For another $500, I can take care of the trees growing through the trailer. For another $500, I can shovel out the trash and garbage that's in there. For another $500, I can repair the roof. There is nothing regarding that, Your Honor. And I realize, let's face it, it's our burden of proof. But it seems to me that if you're going to refute that, then step up to the plate. There was absolutely nothing. And in light of the fact that the testimony of the maintenance folks and the photographs of the trailer, I don't think anything was needed. Regarding the abandonment, I'll just be brief. We addressed that in our brief. There's not much to go on. Simply that abandonment under the law requires three elements. One is that it has to be dangerous and unsafe to cover that. Two, it has to be unoccupied. She admitted it was unoccupied. Three is a real bone of contention. Tax delinquency for two years. Okay. Well, I like the position. I didn't pay any taxes because I didn't get a tax bill. Therefore, I'm not tax delinquent. Well, if you would have filed a deed, maybe you would have gotten a tax bill. I just think it's an odd position to take. But I don't think the court has to address that issue. I think the court's judgment below was based upon whether it was dangerous and unsafe. The equal protection, I'll be brief on that. One is, this is the class one argument. You have to show that the city intentionally treated her differently from those similarly situated. So, two elements. Intentional treatment that's different, and you have to have similar properties, et cetera. Was she treated any different? No. In her mind, maybe she thought she was getting picked on because they wanted the trailer brought in to safe standards. The testimony by Mr. Darnell stated that the city has maybe four or five combination cases a year for the city of DuPont. It's not like we don't do anything for any buildings and we're just going to pick on this lady. They do enforce it. That's Darnell's unrefuted testimony. Mr. Spencer, also at the maintenance department, said her property wasn't given any more attention than other problem properties in the community. Yeah, there's problem properties. And has she been singled out? Absolutely not. There was no testimony from the defendant that showed that somehow she was being singled out. Absolutely not. There was no evidence regarding similarly situated buildings. Now, you see photographs. What I find interesting on these photographs is I have a photograph of a building that may have grass. And I'm going to argue that the grass aside, our grass aside, therefore you're singling her out. There's absolutely no testimony as to whether or not any proceedings were brought. As counsel pointed out, there's no evidence. There was a comment that condemnation was brought against some of these buildings. Other buildings that are being utilized were commercial buildings, a TIF district. It's a little bit different. The point is, if you want my read on why they're not similarly situated, a picture is worth a thousand words. None of those had garbage, trees, and other things growing through them. It was her burden of proof. This is an affirmative defense on the 14th Amendment argument. It was her burden of proof to present some testimony from other property owners or the city that they were deliberately not pursuing condemnation action and just going against her. And as Judge Wexton pointed out, I think it's – the city doesn't have to sit there and condemn every building simultaneously to avoid saying we're picking on you. We go with the plaintiff before we go to two other properties. That makes her a class of one. I don't think so. I think that's a valid point. The last argument I want to make will be brief, and that's the motion to take judicial notice of the demolition. As counsel was aware and stated, the order was entered in June. There was no motion under Rule 305 for a stay of enforcement judgment, absolutely not, zero. It sat there. We waited two days, nothing happened. We waited nine months, nothing happened. The city finally, at the end of April, demolished the building. My motion to take judicial notice is the fact that you can take judicial notice of facts that are readily and accurately demonstrated. And in this case, nobody's going to contend that the trailer wasn't demolished. So under Kennedy v. Edgar, I think that's – you can take judicial notice. Step number two is I filed a motion to take judicial notice. I didn't file a motion to dismiss the appeal. I left that up to the court. Because under Rule 366, you have authority to do different things. But I point out the Chicago v. Ramirez decision. Man, it's like almost on point. In the city of Chicago v. Ramirez, Chicago obtained an order to demolish a building. It was purchased by a new owner. The new owner intervened and said, I want a motion to vacate that demolition order. By the way, there's no motion to vacate the demolition order in this case or whatever. I want a motion to vacate that demolition order because why? I have an agreement with the city to repair and bring it up to code, et cetera. The motion to vacate was denied by the trial court, and the appeal was on the motion to vacate, denial of the motion to vacate. During the appeal, the building was destroyed. The appellate court dismissed the appeal. Why? The appellate court says, what's the relief grant? What's the relief in the appellant's brief and the notice of appeal? Let's vacate that order of the trial court asking her to repair it, and let's just leave the trailer like it is. Let's just vacate it. That's what they want. You can't do that. It's moot. You can't grant the relief that's requested. You can't do it. What about the statutory lien for the cost of demolition? We could probably go after that if we wanted to, Your Honor. Well, I mean, if we were to determine that it was moot, you would go after it. Don't we have to make a determination as to whether or not your demolition was correct to begin with? Sure. I guess you could. You could also dismiss the appeal for lack of jurisdiction and still make the findings. For example, in the city of Chicago versus Ramirez case, which I found real interesting, at the end you read the case, and they dismiss the appeal. But at the beginning they say, this is moot, but regardless of the fact that it's moot, we're going to apply an exception. And the exception they applied was the public importance exception, where it's something of public importance that may reoccur. They're going to discuss it. Well, that's what they did. They discussed it. And then they dismissed the appeal anyway. Do you want to discuss the fact that they're entitled to a lien for demolition of that property and such? I guess you can. Is that going to prohibit you from dismissing the appeal because you can't grant any release to them? I don't think so. In any event, under Rule 366, which I call a catch-all, the appellate court and your honors have wide latitude in carving out a remedy that you think is appropriate in this particular case. For these reasons, I think the trial court's order of June 16, 2010, was not against the manifesto. And it showed that the property was dangerous and unsafe, violating the code. And also, I think since the trailer has been demolished, that there can't be any constructive relief granted to the defendant in this particular case. And accordingly, you can dismiss the appeal or make a findings in the decision and remand it. Thank you. Thank you, Mr. Dolan. Mr. Whitney? Thank you, your honors. First of all, I'd like in my rebuttal time to clear up several misconceptions and misstatements that were made. We hear from opposing counsel that my client's claiming there was a vendetta because of an air conditioner flung out a window. No, that's not what her testimony is. That's not the basis of her selective enforcement claim. Refer the court to pages 9 and 10 of my brief. There was a long history of this woman being picked upon by the city of Des Moines, including, interestingly enough, one incident in which she testified, uncontroverted, that on one occasion the city came on her property and took away her lawnmower. And then claims that she wasn't keeping the grass cut. So this is not the case. That's not what her claims of hostility on the part or animus on the part of the city is based upon. It's based on a long history, which she testified to and which I summarized on pages 9 and 10 of our brief, our principal brief. We hear that the grass and brush has been overgrown for 15 years. Well, I've already addressed that, considering that there was some action on the part of the city in that regard. But this is a red herring. That's not the issue before the court. The issue before the court is whether the buildings, which they wanted demolished, were dangerous or unsafe. Grass and brush around it don't make a building unsafe. We heard a statement that the roof was caving in. Well, the record does not contain any suggestion of that. There was testimony that there were some holes in the roof of the shed, not on the trailer. There was no roof caving in anywhere. Council says, look at the photos. Look at the photos showing trash around the building. Well, by all means, make sure you look at the dates of the photos, too. The dates of the photos showing what arguably was trash were taken in 2007. The more recent photos, the only, quote-unquote, debris, were a couple of bicycles shown in the area of the building. We heard a statement that the electricity was shut off. It's flatly contradicted by the record. Recorded page 108. She even presented copies of her amortization bill showing she's still paying the electricity bills on the property. We heard some argument about holes in the yard. How do holes in the yard make a building unsafe? Again, another red herring. We're talking about the buildings. And conspicuous by its absence in opposing counsel's argument is any response to the requirements of the Illinois Supreme Court in the Stokovich case. Section 1131.1 requires two findings before an order of demolition may issue. You must find that the building was dangerous, unsafe. The building at issue. And you must also find that the building is beyond reasonable repair. And as the court held, because knowledge of the current value of the building is necessary to determine whether a repair makes economic sense, this requires, mandatory language, that a court find the current value before it may issue a demolition order. This is mandatory authority from the Illinois Supreme Court. The court below did not comply. And again, that's where I think this case stands or falls. They didn't meet their burden on that. I could say more about the equal protection claim, but I think I've addressed that adequately. With respect to this issue of mootness, of course, I just received this two to three days ago. I do have other cases. I would like an opportunity to respond to that substantively unless the court's prepared to rule that we're not going to find it moot today. But apart from that, of course, I would like an opportunity to submit authorities of my own. I'm rather confident the collateral consequences doctrine or exception to the mootness doctrine will apply here, among other things. We'll give you time to respond. You have 10 days to respond. Okay. All right. Thank you, Your Honor. Unless there's other questions, we'll rest. Thank you. Thank you. We'll take the matter under advisory.